Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                    1:19-cv-05762

| | |
|---|---|
| Glenn Liou, Jessica McClain, Kristen Ruiz, Barbara Nelson, Charles Wiley, Evan Williams Frank Fuda, Harold Michael, Tiffni Altes, Jennifer Stephens, Christopher Derchin, Leroy Jacobs, Paula Leblanc, Rachel Parks, Theresa Andriulli, Harold Michael, Steve Altes, George Oldroyd, Charles Wiley, Jane Doe, individually and on behalf of all others similarly situated<br><br>                                            Plaintiffs<br><br>                    - against -<br><br>Nestlé Dreyer's Ice Cream Company<br><br>                                        Defendant | Complaint |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Nestlé Dreyer's Ice Cream Company ("defendant") manufactures, distributes, markets, labels and sells ice cream products labeled as types of vanilla ice cream under the DREYER'S brand name throughout the western part of the United States and Texas and under the EDY'S brand name throughout the remainder of the United States ("Products").

2.      The references to Edy's in the complaint are also references to Dreyer's since the Products are identical but for the name.

3.      The Products are available to consumers nationwide from brick and mortar and

online stores of third-parties and/or defendant's website or stores, in sizes which may include 1 pint, 1 quart, 1.5 QT (1.41L) and cups (5 oz. or .171L).

4.     The product lines include (1) Edy's Classics (full fat), (2) Slow Churned (half fat), (3) Slow Churned, No Sugar Added (half fat, no added sugar), (4) Slow Churned, Triple-Filled (half fat, with three "cores" of chocolate fudge and caramel) and (5) Slow Churned, Limited Edition (half fat, seasonal and unique flavor combinations, i.e., Frozen Hot Chocolate).

5.     At any given time, defendant sells approximately seventy-five (75) flavors of ice cream in at least five product lines.

6.     Twenty-one (21) of the Products contain vanilla ice cream or vanilla light ice cream, whether exclusively or as part of an ice cream combination and are indicated in Exhibit A.

7.     The common relevant front label representations, illustrated in the Vanilla Ice Cream, Edy's Classics below, include (1) product name ("Vanilla"), (2) statement of identity (i.e., "Vanilla Ice Cream"), (3) Fresh Milk & Cream, (4) No Artificial Colors or Flavors and (5) Added Colors from Natural Sources.



8.     For the exclusively vanilla ice cream varieties, the statement of identity is the

combination of "Vanilla" + "Ice Cream" because the product purports to be flavored exclusively from vanilla beans.

9. The front labels of the non-exclusively vanilla ice cream products differ by (1) product names and (2) statements of identity.

10. The products in the following table are two examples of products which purport to contain vanilla ice cream or vanilla light ice cream.

| Cookie Dough (Slow Churned) | Neapolitan (Slow Churned, No Sugar Added) |
|---|---|
|  |  |

11. The product names and statements of identity for the above two products are presented below.

| Product Name | Front Label Product Name and Statement of Identity |
|---|---|
| Cookie Dough |  |

Vanilla light ice cream with cookie dough pieces and chocolaty chips

3

Neapolitan



Vanilla, Chocolate and Strawberry light ice creams

## I.  Background

12.     Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

13.     Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

14.     Of all the flavors, vanilla is the perennial number one for 28% of consumers, confirmed the two groups who supply ice cream – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

15.     The reasons for vanilla's staying power is "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[3]

16.     The applications of vanilla ice cream include as the centerpiece of an ice cream sandwich (vanilla ice cream between chocolate wafers), a chocolate chip cookie sandwich (vanilla ice cream between chocolate chip cookies), topping a warm slice of oven-fresh apple pie, hot fudge Sunday, a cold glass of root beer (float).[4]

17.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com.
[3] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[4] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[5] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018

18.     Thomas Jefferson, who had the foresight to write the Constitution, had a similar intuition when he wrote the first American recipe for vanilla ice cream, his preferred flavor.[6]

## II.  Real Vanilla

19.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[7]

20.     Due to its versatility and demand, there are constant attempts to imitate vanilla, whether through synthetic vanillin made from tree bark, or harmful compounds such as coumarin.

21.     Daily headlines alert us to this growing international threat of "food fraud"– whether olive oil made from cottonseeds to the horsemeat scandal in the European Union.[8]

22.     As the world's second most expensive (after saffron) flavoring ingredient, there is a strong incentive for bad actors to "pass off" inferior, cheaper and non-vanilla substitutes in the place of real vanilla, resulting in immense profits at the expense of consumers.

23.     Some adulterant substitutes mimic the real vanilla flavor and replace valuable botanically-derived natural vanillin with less expensive and lower quality components like (1) synthetically produced ethyl vanillin (derived from wood pulp or coal tar), (2) coumarin (a toxin), (3) natural flavors and (4) Tonka beans (banned from the United States).

24.     In other circumstances, there is the addition of "small amounts of a non-authentic

---

[6] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress.

[7] D. Havkin-Frenkel, et al. "A comprehensive study of composition and evaluation of vanilla extracts in US retail stores," Handbook of Vanilla Science and Technology (2019): 349-366)

[8] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019).

substance to mask inferior quality ingredient[s]" or give the impression a product contains more of the higher quality ingredients than it actually does, through color additives to enhance the color of a lower quality food component – i.e., beta carotene.[9]

25.     In both scenarios, the ingredient list is used not as source of consumer information, but the latest battlefield of deception.

26.     Food fraud also encompasses the deliberate misidentification and obfuscation of a product's components as they appear on the ingredient list ("ingredient list deception").

27.     While once naively believed by mainstream commentators to be an area of the nutrition label unaffected by marketing and promotion, the food industry has cleverly used this "neutral" and "factual" space to the detriment of consumers, knowing most of them unquestionably accept what is listed there.

28.     To protect consumers from being deceived by products that purport to contain vanilla but do not, standards were developed to require it be labeled correctly and conform with consumer expectations.[10]

29.     While technology has improved to detect the fingerprints of vanilla fraud through chromatography, the bad actors are always a step ahead, devising new ways of slipping by the latest tests.

III. Vanilla Labeling

30.     For almost half a century, consumers expect vanilla ice cream to contain real vanilla derived from vanilla beans as the exclusive source of the flavor – designated as vanilla flavor or

---

[9] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[10] 21 C.F.R. § 169.175-182.

vanilla extract on the ingredient list.[11]

31.    By law, vanilla refers to "the total sapid and odorous principles extractable from one unit weight of vanilla beans."[12]

32.    Vanilla extract and flavor differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[13]

33.    The Products are represented as, or containing, vanilla ice cream and vanilla light ice cream on the labels, in point-of-sale marketing, retailers' display ads and promotions, websites, television and/or radio ads.[14]

34.    The Products are misleading because despite the expectation their flavoring is exclusively derived from vanilla beans, the ingredient lists reveal otherwise.

| | | |
|---|---|---|
| Vanilla | **Ingredients: Skim milk, cream, sugar, corn syrup, whey, guar gum, carob bean gum, natural flavor, invert sugar, annatto color.** | Skim Milk, Cream, Sugar, Corn Syrup, Whey, Guar Gum, Carob Bean Gum, Natural Flavor, Invert Sugar, Annatto Color. |
| Neapolitan | **Ingredients:** Non-fat milk, cream, maltitol syrup[†], maltodextrin[§], strawberry puree (strawberries, beet juice concentrate color[§], turmeric color, potassium sorbate), polydextrose[†], glycerin, whey protein concentrate, cocoa processed with alkali, propylene glycol monostearate, guar gum, citric acid, sorbitol[†], beet juice color[§], monoglycerides, carrageenan, acesulfame potassium, sucralose, xanthan gum, natural flavor, annatto color, vitamin A palmitate. | Non-Fat Milk, Cream, Maltitol Syrup, Maltodextrin, Strawberry Puree (Strawberries, Beet Juice Concentrate Color, Turmeric Color, Potassium Sorbate), Polydextrose, Glycerin, Whey Protein Concentrate, Cocoa Processed with Alkali, Propylene Glycol Monostearate, Guar Gum, Citric Acid, Sorbitol, Beet Juice Color, Monoglycerides, Carrageenan, Acesulfame Potassium, Sucralose, Xanthan Gum, Natural Flavor, Annatto Color, Vitamin A Palmitate. |

---

[11] 21 C.F.R. § 135.110(f)(2)(i) ("Category 1); 21 C.F.R. § 169.175-182.
[12] 21 C.F.R. §169.3(c)
[13] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.).
[14] 21 C.F.R. § 135.110(f)(6) (applying identical labeling for vanilla ice cream when combined with other flavors, i.e., Neapolitan).

7

| | | |
|---|---|---|
| Cookie Dough | **Ingredients:** Non-fat milk, chocolate chip cookie dough (wheat flour, sugar, brown sugar, butter, water, soybean oil, chocolate chips [sugar, chocolate, cocoa butter, soy lecithin, vanilla extract], corn starch, molasses, salt, natural flavor, soy lecithin, baking soda), sugar, corn syrup, cream, chocolatey chips (sugar, coconut oil, cocoa processed with alkali, fractionated palm kernel oil, cocoa, soy lecithin, salt, natural flavor), maltodextrin, whey protein, propylene glycol monostearate, guar gum, monoglycerides, xanthan gum, carrageenan, annatto color, vitamin A palmitate, natural flavors (with vanilla extract). | Non-Fat Milk, Chocolate Chip Cookie Dough (Wheat Flour, Sugar, Brown Sugar, Butter, Water, Soybean Oil, Chocolate Chips [Sugar, Chocolate, Cocoa Butter, Soy Lecithin, Vanilla Extract], Corn Starch, Molasses, Salt, Natural Flavor, Soy Lecithin, Baking Soda), Sugar, Corn Syrup, Cream, Chocolatey Chips (Sugar, Coconut Oil, Cocoa Processed with Alkali, Fractionated Palm Kernel Oil, Cocoa, Soy Lecithin, Salt, Natural Flavor), Maltodextrin, Whey Protein Concentrate, Propylene Glycol Monostearate, Guar Gum, Monoglycerides, Xanthan Gum, Carrageenan, Annatto Color, Vitamin A Palmitate, Natural Flavors (with vanilla extract). |

35.     The above products' ingredients are identical across the identified vanilla ice cream products here.

36.     Two of the three products list "natural flavor" while the third declares "Natural Flavors (with vanilla extract)."

IV. Natural Flavor is not a Synonym for Vanilla Flavor or Vanilla Extract in the Products

37.     The ingredient lists do not identify vanilla extract or vanilla flavoring as the sole flavoring source.

38.     "Natural flavors" is not the same thing as "vanilla extract" or "vanilla flavoring" in the present context.

39.     A rule of thumb when faced with general and specific regulations is to use a specific one.

40.     Defendant's choice to not list vanilla flavor or extract is an admission that the

"natural flavor" is not another way of identifying the specific vanilla ingredients. *Compare* 21 C.F.R. § 101.22 (natural flavor) *with* 21 C.F.R. § 169.175 (Vanilla extract.) and§ 169.177 (Vanilla flavoring.).

41.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavor) but designate it with a general term perceived by consumers to cost less money and appearing on most foods in existence ("natural flavor").

V.  The Standardized Vanilla-Vanillin Ingredients are not Labeled as Natural Flavor

42.    The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[15]

43.    The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements for "natural flavor."[16]

44.    The "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp or coal tar.

45.    While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

46.    This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

47.    For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose

---

[15] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[16] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).

flavor it simulates.[17]

48.    This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

49.    This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[18]

50.    Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

VI.  "Natural Flavor" Refers to Vanilla With Other Natural Flavors ("Vanilla WONF)

51.    The Cookie Dough Product's ingredient list – perhaps an older version of the current list – indicates "Natural Flavors (with vanilla extract)."

52.    "Natural Flavors (with vanilla extract)" is likely the ingredient designated by "natural flavor" as the flavoring for the other Products.

53.    In a vanilla ice cream product, it is misleading to label ingredients which *simulate and reinforce and extend* vanilla as a "natural flavor" or "Vanilla with other natural flavor" because it misleadingly implies that the flavor is derived from vanilla beans, whose flavor it simulates.[19]

54.    In the context of vanilla ice cream, WONF flavors would be designated where there is "a characterizing flavor from the product [vanilla flavor *from* vanilla] whose flavor is simulated and other natural flavor [synthetic or artificial vanillin] which simulates, resembles or reinforces the characterizing flavor."

55.    No standardized vanilla ingredients provide for "other natural flavors" to be added

---

[17] 21 C.F.R. § 101.22(a)(3)
[18] In contrast to the regulations at 21 C.F.R. § 101.22.
[19] 21 C.F.R. § 101.22(a)(3)

with a vanilla flavoring or extract because this would result in the spiking of the vanilla flavor, deceiving consumers to believing that more vanilla is present than actually the case, and that all of the vanilla flavor is derived from vanilla beans.

VII. Labels Represent the Products as Vanilla Ice Creams, but Careful Look Reveals They are Not

56.    If the Products were vanilla ice cream with the flavor deriving entirely from vanilla beans, the front label would have the term "ice cream" proximate to "vanilla" and the difference in their size would be less than it is.[20]

57.    The label is clever because on the flagship product, the Edy's Classics Vanilla Ice Cream, it does not use the terms "Vanilla" and "Ice Cream" as part of one term.

58.    Instead, "vanilla" is listed on the blue bar and "ice cream" is below it, so defendant can plausibly assert, "the Product was never labeled 'vanilla ice cream'" even though that is the intended impression taken by consumers.

59.    The Products are misleading because in addition to the misrepresentation of the flavoring source, the labels state "Fresh Milk & Cream" and "No Artificial Colors or Flavors" on opposite side of the ice cream cone on the front label.

60.    The "Fresh Milk & Cream" claim is another way to list the main ingredients of ice cream" in proximity to the term "vanilla" without putting the three words together, so as to avoid regulatory scrutiny and consequence.

61.    The "Fresh Milk & Cream" claim is misleading because the Products are not fresh, understood by reasonable consumers as "just prepared."

---

[20] 21 C.F.R. § 135.110(f)(2)(i) ("If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the words "ice cream".").

62.   The Products are subjected to preservation treatments and have a shelf (freezer) life on the order of several months.

63.   Though ice cream is obviously a fabricated food, "fresh" versions of ice cream exist and are or may be available for sale in proximity to the Products, creating a false equivalence and causing consumers to think the Products are recently prepared when they are not.

64.   The "No Artificial Colors or Flavors" is misleading because it gives the consumer the impression that the representations as forms of vanilla ice cream are truthful and that all the flavoring elements are derived from vanilla beans.

65.   This is because reasonable consumers do not expect vanilla ice cream products to contain flavorings not derived from vanilla – any such flavorings may be natural under the general flavoring regulations but in the context of vanilla ice creams, unless it is derived from vanilla beans, it cannot be considered natural.

VIII.   Coloring Reinforce the Deception that the Products are Vanilla Ice Cream

66.   The Products contain "added colors from natural sources," disclosed in a light, small font on the front label beneath "No Artificial Colors or Flavors."

67.   This labeling is misleading because the "added colors from natural sources" is difficult to see because of the contrast between the font and background color.

68.   It is misleading because when a consumer sees no artificial colors or flavors, fresh milk and cream and "vanilla" and vanilla ice cream, they will not even squint to see the "added colors" text because they would have already concluded "this is a real vanilla ice cream product."

69.   The added color – annatto, commonly known as the food coloring used in cheddar cheese, provides a richer yellow shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

70.    No allegation is made with respect to the how the annatto is declared in the ingredient list as its use is specifically permitted by regulation.[21]

71.    Rather, the addition of annatto has the effect of modifying the color of the ice cream to a color closer to vanilla ice cream flavored exclusively by vanilla bean components – a darker shade like in the following stock image.



72.    This coloring makes the consumer less likely to question or probe into the amount and type of vanilla flavor in the Products.

IX. Conclusion

73.    The Products contain other representations which are misleading and deceptive.

74.    As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $6.99 per 48 oz (1.5 quart/1.4L) (across the product line), excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

75.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

76.    Upon information and belief, the aggregate amount in controversy is more than

_____

[21] 21 C.F.R. § 101.22(k)(3)

$5,000,000.00, exclusive of interests and costs.

77.    This court has personal jurisdiction over defendant because it conducts and transacts

business, contracts to supply and supplies goods within New York.

78.    Venue is proper because plaintiff and many class members reside in this District and

defendant does business in this District and State.

79.    A substantial part of events and omissions giving rise to the claims occurred in this

District.

Parties

80.    Plaintiff Liou is a citizen of Bronx County, New York.

81.    Plaintiff Fuda is a citizen of Will County, Illinois.

82.    Plaintiff Tiffni Altes is a citizen of Los Angeles County, California.

83.    Plaintiff Michael is a citizen of Sedgwick County, Kansas

84.    Plaintiff Williams is a citizen of Clinton County, New York but until recently was a

citizen of New London County Connecticut, where he purchased the Products.

85.    Plaintiff Derchin is a citizen of Richmond County, New York.

86.    Plaintiff Stephens is a citizen of Elmore County, Idaho.

87.    Plaintiff Jacobs is a citizen of Cook County, Illinois.

88.    Plaintiff Oldroyd is a citizen of Shelby County, Alabama.

89.    Plaintiff Ruiz is a citizen of Yamhill County, Oregon.

90.    Plaintiff McClain is a citizen of Aberdeen County, Washington.

91.    Plaintiff Leblanc is a citizen of Middlesex County, Massachusetts.

92.    Plaintiff Andriulli is a citizen of New Haven County, Connecticut.

93.    Plaintiff Steve Altes is a citizen of Los Angeles County, California.

94.    Plaintiff Parks is a citizen of Grayson County, Virginia.

95.    Plaintiff Wiley is a citizen of Bernallio County, New Mexico and was a citizen of Franklin County, Ohio until recently and purchased the Products in Franklin and Bernallio County.

96.    Plaintiff Nelson is a citizen of Contra Costa County, California.

97.    Jane Doe plaintiffs are citizens of the 38 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

98.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

99.    Defendant is a Delaware corporation with a principal place of business in Oakland (Alameda County), California.

100.    During the class period, Named Plaintiffs and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

101.    Named Plaintiffs and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

102.    Named Plaintiffs and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

103.    The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

104.    The present complaint contains Named Plaintiffs from: California, Connecticut Kansas, Massachusetts, Illinois, New York, New Mexico, Ohio, Oregon, Virginia and Washington, who will represent their state sub-classes of persons who purchased any Products

containing the actionable representations during the statutes of limitation.

105.   Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named Plaintiffs and Jane Doe Plaintiffs and class members are entitled to damages.

106.   Named Plaintiffs' and Jane Doe Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

107.   Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

108.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

109.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

110.   Named Plaintiffs' and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

111.   Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers<br>Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")<br>and Consumer Protection Statutes of Other States and Territories</u>

112.   Named Plaintiffs and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiffs asserting the consumer protection laws of their individual states.

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
d.   California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair

Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et.*

*seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

113.   Named Plaintiffs and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States, *supra*.

114.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair.

115.   Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

116.   Named Plaintiffs and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

117.   After mailing appropriate notice and demand, California and Massachusetts Plaintiffs and other plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended the present complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws ch. 93A.

118.   California Plaintiffs will seek injunctive and equitable relief and attorney fees for violations of the CLRA for that Subclass. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17203.

119.   The representations and omissions were relied on by Named Plaintiffs and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

120.   Named Plaintiffs and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

121.   Defendant misrepresented the misrepresented the substantive, compositional, health, organoleptic and/or nutritional attributes of the Products.

122.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

123.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

124.  The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector.

125.  Named Plaintiffs and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

126.  Named Plaintiffs and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability,</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

127.  Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

128.  Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

129.  The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, compositional, organoleptic, sensory, physical and other attributes which they did not.

130.  Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

131.  This duty is based, in part, on defendant's position as one of the largest users of the

characterizing ingredient or flavor in the world.

132.   The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that the ingredient on the front label was designed to reflect and be understood as part of the product name and refer to its characterizing flavor and be derived from that food, exclusively and contained an amount sufficient to characterize the Products.

133.   Named Plaintiffs and Jane Doe Plaintiffs desired to purchase products which were as described by defendant.

134.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

135.   To the extent notice may be required, Named Plaintiffs and Jane Doe Plaintiffs either have sent or intend to send notice to defendant and reserve all rights to amendment of the complaint.

136.   Named Plaintiffs, Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

137.   Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

138.   Defendant's purpose was to sell a product which contained a valuable characterizing ingredient or flavor, and represent the Products contained sufficient independent amounts of said ingredient or flavor such that they would accurately be described as vanilla ice cream.

139.   Defendant's fraudulent intent is evinced by its very careful labeling – for example, defendant never says the three words together, "vanilla ice cream," on the labels.

140.   However, it cleverly emphasizes the vanilla component and accompanies this not by

20

the name of the food, ice cream, as required, but by the main *ingredients* of ice cream – milk, cream, sugar.

141.  Defendant does not declare the products vanilla ice cream but that is the impression and intended result.

142.  Defendant intends that consumers view the vanilla type as the characterizing flavor yet does not include the word "flavor."

143.  Not seeing the term flavor, consumers will expect the Products to be exclusively characterized by vanilla.

144.  Defendant's intent was to secure economic advantage in the marketplace against competitors.

145.  Named Plaintiffs and Jane Doe Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

146.  Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

147.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Named Plaintiffs and Jane Doe Plaintiffs demand a jury trial on all issues.

   **WHEREFORE,** plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 20, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-05762
United States District Court
Eastern District of New York

Glenn Liou, Jessica McClain, Kristen Ruiz, Barbara Nelson, Charles Wiley, Evan Williams Frank
Fuda, Harold Michael, Tiffni Altes, Jennifer Stephens, Christopher Derchin, Leroy Jacobs, Paula
Leblanc, Rachel Parks, Theresa Andriulli, Harold Michael, Steve Altes, George Oldroyd, Charles
Wiley, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Nestlé Dreyer's Ice Cream Company

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of
New York State, certifies that, upon information, and belief, formed after an inquiry reasonable
under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 20, 2019

/s/ Spencer Sheehan
Spencer Sheehan